# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JULIAN LOPEZ,**

            Petitioner,

      v.                                                                 Case No. 05-C-998

**WILLIAM POLLARD,**

            Respondent.

## DECISION AND ORDER

       This matter comes before the court on Julian Lopez's ("Lopez") petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Lopez is a Wisconsin prisoner confined at the Green Bay Correctional Institution. After a jury trial in Milwaukee County Circuit Court, Lopez was convicted of first degree intentional homicide, while armed, party to a crime and sentenced to a term of life in prison without the possibility of parole.

       Lopez alleges that the trial court denied him a fair jury trial under the Sixth and Fourteenth Amendments to the United States Constitution by requiring him to participate in a jury view of the crime scene, while escorted by four security officers in body-armor, carrying assault rifles. Lopez raised this objection at trial and on direct appeal. His petition is timely filed and it is not second or successive. Accordingly, the Court will address the merits of Lopez's claims.

       Upon consideration of the petition and the answer thereto, the Court concludes that Lopez's petition should be dismissed.

## BACKGROUND

On March 17, 1999, Anthony Davis ("Davis") was shot and killed near the Garden Fresh building on Milwaukee's south side. Witnesses heard multiple gunshots and observed two men in dark clothes fleeing from the scene. No witnesses were able to identify the perpetrators at the time. Several witnesses identified a black 4 x 4 extended cab chevy truck at the scene. This truck would later be identified as involved in the homicide and as belonging to one of Lopez's accomplices.

In September 1999, Lopez was charged with first degree intentional homicide after three witnesses came forward to identify Lopez and Loyd Guzior ("Guizor") as the perpetrators. Guzior accepted a plea bargain. Lopez's trial began on June 5, 2000.

At the commencement of the trial, the circuit court granted the state's request for a jury view of the crime scene and other relevant locations. Lopez received notification prior to the jury view and made no objection. The jury was taken to five locations, including the crime scene and the homes of Lopez and his accomplices. The circuit court took extensive security measures for the jury view. Four officers in body-armor, carrying assault rifles, surrounded Lopez at all times, in full view of the jury. Upon seeing the security measures, Lopez initially refused to participate until the officers informed him that he was required to do so by the circuit court.

After the jury view, Lopez's counsel objected to the security measures of the jury view and moved for a dismissal. The circuit court held that, under these circumstances, the measures were not extreme and denied the motion. The circuit court gave the jury a limiting

instruction not to draw negative inferences about Lopez from the security precautions. The Jury convicted Lopez on June 16, 2000.

Lopez filed a motion for post-conviction relief with the circuit court, requesting either a new trial or modification of the sentence. On February 18, 2002, the circuit court denied the motion on the grounds that the security precautions were justified by security risks involved in a jury view involving an accused murderer, and such precautions were in accord with Wisconsin law. The circuit court also denied Lopez's supplemental motion for an evidentiary hearing on June 27, 2003.

Lopez filed a timely notice of appeal with the Wisconsin Court of Appeals. Lopez asserted that his rights to a fair trial, an impartial jury and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution were violated when he was forced to participate in a jury view subject to the aforementioned security measures. On June 29, 2004, the Wisconsin Court of Appeals affirmed the judgment of the Circuit Court and Lopez's sentence.

The Wisconsin Supreme Court denied a petition for review on September 16, 2004. Lopez timely filed the instant writ on September 15, 2005.

**ANALYSIS**

When exercising the power of the writ of habeas corpus, federal courts must be respectful of the state sovereignty and "not unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44 (1971). The federal courts must only use its

power sparingly to protect constitutional rights, always mindful of the necessity for comity between the federal and the state court systems.

The federal courts must deny all petitions for habeas corpus to any state claims adjudicated on the merits, unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if it was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). The "unreasonable application" prong is a difficult standard to meet. *Daniels v. Knight*, 476 F.3d 426, 433 (7th Cir. 2007) (citing *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003)).

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). Certain practices can pose a threat to this foundation of the criminal law and must be "subjected to 'close judicial scrutiny.'" *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986) (quoting *Estelle v. Williams*, 425 U.S. 501, 503-04 (1976)). The use and effect of security officers and other security measures are among these practices. *Id*. at 569.

The presence or use of security officers in the courtroom is not inherently prejudicial. *See Lambert v. McBride*, 365 F.3d 557, 563 (7th Cir. 2004). Jurors can infer a great number of reasons for their presence. The Supreme Court recognized this when it wrote: "jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into

-4-

violence." *Holbrook*, 475 U.S. at 569. Thus, the Supreme Court mandates a "case-by-case approach" to determine if the presence of security officers at a judicial proceeding is prejudicial to the accused, mindful of the state's interest in maintaining order and security in its courts. *Id.* at 569-70.

The trial judge is given wide latitude in the implementation of appropriate security measures. "It is he who is best equipped to decide the extent to which security measures should be adopted to prevent disruption of the trial, harm to those in the courtroom, escape of the accused, and the prevention of other crimes." *United States v. Samuel*, 431 F.2d 610, 615 (4th Cir. 1970) (quoted in *Harrell v. Israel*, 672 F.2d 632, 636 (7th Cir. 1982)); *see also Deck v. Missouri*, 544 U.S. 622, 628 (2005). The Sixth Amendment gives a trial judge great latitude in what security measures he may employ. *See Illinois v. Allen*, 397 U.S. 337, 344 (1970) (allowing an obstreperous criminal defendant to be bound and gagged during a trial as a last resort). In the end, the question is whether the presence of security officers is so prejudicial that the accused has been denied his or her constitutional right to a fair trial.

In the present case, there can be no doubt that the security measures were severe. The jury saw Lopez being escorted by four armed guards in body-armor, carrying assault rifles. However, the use of security is not *per se* prejudicial. The jury could have drawn several conclusions concerning Lopez's security. The fact that the jurors were being transported away from the inherently secure courtroom setting to the scene of an alleged murder more than justifies the use of heightened security measures. Moreover, the state has a serious

-5-

interest in preventing the escape of an accused murderer while on trial. *See Schiro v. Clark*, 963 F.2d 962, 976 (7th Cir. 1991).

Finally, this level of security did not persist when the trial continued in its normal setting. After the jury view, security went back to a normal level for the remainder of the trial. The circuit court also gave a limiting instruction to the jury, thereby mitigating any prejudice that resulted from the jury view. *See United States v. Van Sach*, 458 F.3d 694, 700 (7th Cir. 2006) (limiting instructions help to safeguard a jury from prejudice caused by seeing restraints in the courtroom). Thus, it cannot be said that the circuit court's extensive security measures for the jury view was an unreasonable application of clearly established Federal law.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Lopez's petition for a writ of habeas corpus is **DENIED**; and

2. This matter is **DISMISSED** in its entirety.

Dated at Milwaukee, Wisconsin this 5th day of July, 2007.

> **SO ORDERED,**
>
> s/ Rudolph T. Randa
> **HON. RUDOLPH T. RANDA**
> **Chief Judge**